IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| SUSAN L. WALLINGFORD and GREG E. HAJEK, | ) ) ) | |
| Plaintiffs, | ) ) | 8:08CV57 |
| v. | ) ) ) | |
| JEFF OLSON, in Individual and Official Capacity, JEROME STEWART, in Individual and Official Capacity, CITY OF SCHUYLER, and COUNTY OF COLFAX, SCOTT WEEMER, in Individual and Official Capacities, LENNIE HILTNER, in Individual and Official Capacities, and LYNN L. BLUM, in official capacity as Sheriff, County of Colfax, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | MEMORANDUM AND ORDER |
| Defendants. | ) ) | |

This matter is before the court on the motion for summary judgment, Filing No. 55, by defendants Lynn Blum (Sheriff of Colfax County); County of Colfax; and Jeff Olson (Deputy Sheriff of Colfax County). Also before the court is a motion for summary judgment, Filing No. 65, by defendants Lennie Hiltner (chief of police, Schuyler, Colfax County); Jerome Stewart (police officer for Schuyler, Colfax County); City of Schuyler, and Scott Wimer[1] (police officer for Schuyler, Colfax County). Plaintiffs' amended complaint, Filing No. 38, alleges that defendants had a history of harassing plaintiffs for driving antique automobiles. They further contend that while learning to drive scooters for their vacation, the defendant officers stopped them on July 3, 2006, for revving their scooter engines at a stop light and for failure to wear Department of Transportation approved helmets. The

---

[1]The court notes that Scott Wimer's name is misspelled as "Weemer" in the caption of this case.

police officers asked the plaintiffs to sign the citations; the plaintiffs refused.  Plaintiff Wallingford alleges Officer Olson grabbed her breast, pushed her into the police vehicle, shoved her to the ground where her head hit the pavement, and broke her ankle. Filing No. 61, Affidavit (hereafter "Aff.") of Wallingford. Officers Stewart and Wimer allegedly threw plaintiff Hajek to the ground, and he incurred injuries and received treatment at the hospital. Hajek contends that one of the officers kneed him in the groin so many times that he had a bowel movement.  Filing No. 61, Aff. of Hajek.  Defendants contend that Wallingford struck Officer Olson in the head when he tried to arrest her.  Plaintiffs have filed suit for civil rights violations under 42 U.S.C. § 1983 alleging excessive force against defendants Olsen, Stewart and Wimer in their individual and official capacities; failure to train against defendants Hiltner, Blum, City of Schuyler, and County of Colfax; and negligent hiring against defendants Hiltner, Blum, City of Schuyler, and County of Colfax.  See Amended Complaint, Filing No. 38.

**Standard of Review**

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c);  *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005).  "Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate."  *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995).

The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party.  Fed. R. Civ. P. 56(c);  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144,

157 (1970). Therefore, if a defendant does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence. *Adickes*, 398 U.S. at 159-60; *Cambee's Furniture, Inc. v. Doughboy Recreational Inc.*, 825 F.2d 167, 174 (8th Cir. 1987).

Once the defendant meets its initial burden of showing there is no genuine issue of material fact, the plaintiff may not rest upon the allegations of his or her pleadings but rather must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *See* Fed. R. Civ. P. 56(e)(2); *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998). The party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts; he or she must show there is sufficient evidence to support a jury verdict in his or her favor. *Id.* "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Although facts are viewed in the light most favorable to the non-moving party, in order to defeat a motion for summary judgment, the non-moving party cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Carter v. St. Louis Univ.*, 167 F.3d 398, 401 (8th Cir. 1999). "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations." *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003).

Qualified immunity shields governmental officials from personal liability if their actions, even if unlawful, were nevertheless objectively reasonable in light of the clearly

established law at the time of the events in question.  *Anderson v. Creighton*, 483 U.S. 635, 638-41 (1987).  The inquiry in determining whether the officers are entitled to qualified immunity focuses on whether the plaintiffs have asserted a violation of a clearly established constitutional right and, if so, whether there are genuine issues of material fact as to whether a reasonable official would have known that the alleged action indeed violated that right.  *Turpin v. County of Rock*, 262 F.3d 779 (8th Cir. 2001).  A court required to rule upon the qualified immunity issue "must consider this threshold question:  Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  This must be the initial inquiry."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.  *Id.* The second inquiry, whether the right was clearly established at the time, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable.  *Id.* (noting "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.").

To state a claim under § 1983, a plaintiff must set forth facts that allege an action performed under color of state law that resulted in a constitutional injury.  *Id.*  A local government, however, cannot be held liable under section 1983 for an injury inflicted solely by its employees or agents on a theory of *respondeat superior.  Id.; see Monell v. Department of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978).  Rather, a plaintiff seeking to impose such liability is required to identify either an official municipal

4

policy or a widespread custom or practice that caused the plaintiff's injury. *Springdale Educ. Ass'n v. Springdale School Dist.,* 133 F.3d 649, 651 (8th Cir. 1998).  The identification of an official policy as a basis upon which to impose liability ensures that a municipality is held liable only for constitutional deprivations that result from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.  *Id.*  Similarly, actions performed pursuant to a municipal "custom," although not formally approved by an authorized decision-maker, may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.  *Id.*

**Discussion**

### *A.  Summary Judgment, Filing No. 55*

Defendants County of Colfax (hereinafter "County"); Colfax County Deputy Sheriff Jeff Olson (hereinafter "Olson"); and Lynn L. Blum, Colfax County Sheriff (hereinafter "Blum") file this summary judgment.  Defendants allege that no evidence exists that Officer Olson used excessive force with regard to plaintiff Wallingford.  As a result, defendants argue the court should dismiss Officer Olson from the lawsuit.  Further, because Officer Olson should be dismissed, the defendants argue that both the County and Blum should be dismissed.  Even if the court does not dismiss Olson, defendants contend that both the County and Blum should be dismissed because there is no evidence of a custom or policy regarding training or supervision that gives rise to a cause of action in this case. Additionally, these two defendants argue that they have been sued in their official capacity which is the same as a suit against the governmental entity itself, and thus, they should be dismissed on that basis alone.

5

### 1.  Officer Olson in his individual capacity

Officer Olson argues that he is entitled to qualified immunity for the suit against him in his individual capacity.   The first step in this analysis is whether there exists any constitutional right that Officer Olson violated, and the second step in the analysis is whether this right was clearly established at the time Officer Olson violated it.   *Littrell v. Franklin,* 388 F.3d 578, 582-83 (8th Cir. 2004).  Wallingford argues that the use of excessive force violates her Fourth Amendment constitutional rights.

Officer Olson contends he did not use excessive force in this case, and he believed Wallingford violated the law.  First, Officer Olson alleges he heard her loud muffler on the motor scooter.  Second, Officer Olson argues he observed Wallingford obsessively revving up her engine. Wallingford states she revved up her engine only to practice with her new scooter before they went on vacation, so she would learn not to stall out the engine. Third, the officers observed and later confirmed that Wallingford's helmet did not meet Department of Transportation requirements for helmets.  Wallingford admitted at the scene that the helmet did not comply, but she told the officers that she had one at home that did comply.  Fourth, Officer Olson asked Wallingford to sign the citation and she refused.  It is a misdemeanor to refuse to sign a citation.  Neb. Rev. Stat. § 60-684.  Law enforcement officers are permitted to arrest someone who refuses to sign a citation.  Neb. Rev. Stat. § 29-427.  Officer Olson argues he used only the amount of force necessary to arrest Wallingford, who resisted and slapped him in the face.  Wallingford claims that the actions of law enforcement officers who have used excessive force during an arrest or other

seizure are analyzed under the Fourth Amendment and its "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 387-88 (1989).[2]

To decide whether a particular use of force is objectively reasonable, courts examine the facts and circumstances of each case, including the crime's severity, whether the suspect poses an immediate threat to the safety of officers or others, and whether the suspect actively resists arrest or flees. *Id.* at 396; *Seiner v. Drenon*, 304 F.3d 810, 812 (8th Cir. 2002). The proper perspective in judging an excessive force claim is that of "a reasonable officer on the scene" and "at the moment" force was employed. *Graham*, 490 U.S. at 396. The calculus of reasonableness must allow for the fact that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Id.* at 396-97. Moreover, it has long been recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. *Saucier*, 533 U.S. at 208.

Whether an action is "reasonable" in the Fourth Amendment sense, can only be analyzed by weighing and balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (citations omitted). Although not every push or shove violates the Fourth Amendment. *Guite v. Wright*, 147 F.3d 747, 750 (8th Cir. 1998), the use of gratuitous force against a helpless individual is unreasonable. *See, e.g., Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir. 2002) (noting "on the facts as we must take them, there was simply no governmental interest in continuing to beat [the plaintiff] after he had been

---

[2]The qualified immunity inquiry adds another dimension to a Fourth Amendment reasonableness analysis: even if a court should determine that the Fourth Amendment is violated, immunity can be granted to officers for reasonable mistakes as to the legality of their actions. *Saucier*, 533 U.S. at 205-06.

neutralized, nor could a reasonable officer have thought there was"); *Fontana v. Haskin,* *262 F.3d 871, 880 (9th Cir. 2001)* (stating "[g]ratuitous and completely unnecessary acts of violence by the police during a seizure violate the Fourth Amendment."); *Miller v. Smith,* *220 F.3d 491, 495 (7th Cir. 2000)* (finding allegations that officers smacked suspect around while he lay cuffed on the ground violate the Fourth Amendment); *Palmer v. Sanderson,* *9 F.3d 1433 (9th Cir.1993)* (noting that jerking, pushing, and tightly handcuffing a 67-year-old man amounts to excessive force); *Adams v. Metiva,* 31 F.3d 375, 387 (6th Cir.1994) (stating use of force after suspect was incapacitated by Mace is a jury question).

The court has carefully reviewed the facts and arguments presented for this summary judgment, including the videotape of the incidents in question, Filing No. 30. The court finds that a reasonable jury could view these actions by Officer Olson as excessive force under the circumstances of this stop. The officers pulled the plaintiffs over for a loud muffler. The stop resulted in an apparent broken ankle and a trip to the hospital for both plaintiffs (although Wallingford refused treatment until the next day). Accordingly, the court will deny the summary judgment as to the excessive force claim by Wallingford against Olson and will allow it to proceed for a jury determination. However, there is no evidence of excessive force by Olson against Hajek and the court will grant summary judgment in this regard.

### 2. Olson, Blum and County of Colfax official capacity claims

These defendants first argue that there is no individual liability claim against Olson, so consequently, all official capacity claims against them must fail. The court has already determined that there exists a jury question with regard to Olson and the use of excessive force against Wallingford. Therefore, this argument fails.

In the alternative, if the court finds potential individual liability, these defendants argue that there is no official capacity claim against them because there is no evidence of a policy, practice or custom that caused the alleged constitutional deprivation. *Gatlin v. Green*, 362 F.3d 1089, 1094 (8th Cir. 2004). With regard to the failure to train and supervise, the Eighth Circuit recently held:

> A supervisor may be held individually liable under § 1983 if he directly participates in the constitutional violation or if he fails to train or supervise the subordinate who caused the violation. *Tilson v. Forrest City Police Dep't*, 28 F.3d 802, 806 (8th Cir. 1994), cert. denied, 514 U.S. 1004, 115 S. Ct. 1315, 131 L.Ed.2d 196 (1995). The standard of liability for failure to train is deliberate indifference. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed.2d 412 (1989). The standard of liability for failure to supervise is "demonstrated deliberate indifference or tacit authorization of the offensive acts." *Wilson v. City of N. Little Rock*, 801 F.2d 316, 322 (8th Cir. 1986).

*Brockington v. City of Sherwood*, 503 F.3d 667, 673 (8th Cir. 2007). Plaintiffs must show that "notice that its police training was inadequate and deliberately chose not to remedy the situation, or that it was deliberately indifferent to a continuing, widespread, persistent pattern of unconstitutional misconduct." *Robinson v. City of St. Charles*, 972 F.2d 974, 977, n.2 (8th Cir. 1992).

The record before the court shows that defendants had training on the use of excessive force. The defendants have provided as evidence the "use of force" policy utilized by the Colfax County Sheriff's Department and in effect at the time of this incident. (*See* Aff. of Jeff Olson, Exhibit "C," Filing No. 30, Attachment 1). Plaintiffs have offered nothing to the contrary. Filing No. 57, Aff. of Lynn Blum. The court finds that the total lack of evidence coupled with the fact that this appears to be a one-time incident requires the court to grant the motion for summary judgment as to any municipal liability on the failure

to train or supervise claims against these defendants.  For essentially the same reasons the court finds the motion for summary judgment will be granted as to the claim of negligent hiring against the County and Blum.  Plaintiff has presented no evidence of a policy, practice or custom that caused the alleged constitutional deprivation.  *Gatlin*, 362 F.3d at 1094.  Accordingly, the court will grant the motion for summary judgment as to all claims against these individuals in their official capacities.[3]

### *B.  Summary Judgment, Filing No. 65*

Defendant police officers Jerome Stewart and Scott Wimer, in their individual capacities, and Lennie Hiltner, in his official capacity as the City of Schuyler Chief of Police, and the City of Schuyler, move for summary judgment against the plaintiffs pursuant to Fed. R. Civ. P. 56 for qualified immunity and on the merits of the case.  According to defendants, Officer Stewart states that plaintiff Hajek became aggressive during the traffic stop.  Further, Officer Stewart claims he had previous knowledge that (1) Hajek had threatened to use guns against officers, and (2) Hajek was known to refuse to sign citations.[4]

### 1. Chief Hiltner

For the same reasons as set forth in Part A above, the court will grant the motion for summary judgment as to the failure to train and failure to supervise.  Again, there is a total absence of evidence on this issue.  Further, it is clear from the evidence submitted by the defendants that there exists a training program.  *See Smith v. Watkins*, 159 F.3d 1137,

---

[3]The plaintiffs admit there is a lack of evidence on this issue in their reply brief, Filing No. 69, at 1.

[4]For the record, it appears from the videotape that Hajek made a comment about having a right to get a gun to protect himself.  However, it further appears that the officers did not feel threatened by this statement as both plaintiffs were permitted to sit by the curb without restraint.

1139 (8th Cir. 1998) (must show evidence of "defects" in training procedures of city); Filing No. 66, Hiltner Aff. ¶ 4; Stewart Aff. ¶ 3; Wimer Aff. ¶ 3; see also, *Brockinton,* 503 F.3d at 673 (training requirement met constitutional standards).

### 2. Officers, City, and Chief Hiltner

For the same reasons as set forth in part A above, the court will grant the motion for summary judgment on the basis that the plaintiffs failed to provide any evidence that might prove a custom or policy that violates the Constitution of the United States. Likewise, all claims against these defendants in their official capacities fail. *See Brandon v. Holt,* 469 U.S. 464, 471-72 (1985).

### 3. Officers Stewart and Wimer

For the same reasons as set forth in part A above, the court finds there is sufficient evidence to submit the claim of excessive force to the jury as to Officers Steward and Wimer. Thus, their qualified immunity defense must fail. Defendants claim that Officer Stewart verbally warned Hajek before using any force against him, and Hajek became aggressive when Officer Olson tried to subdue Wallingford. The officers argue they used the least amount of force necessary under the circumstances. Hajek claims the officers kicked and beat him which resulted in a trip to the hospital. The court has again viewed the videotape, Filing No. 30, and finds that the officers used significant force against Hajek. Such force clearly creates a triable issue of fact regarding excessive force for the jury's determination. Consequently, the motion for summary judgment is denied as to this claim.

11

THEREFORE, IT IS ORDERED:

1.   Defendants' motion for summary judgment, Filing No. 55, is granted in all respects, except as to the excessive force claim by Wallingford against Officer Olson.  This excessive force claim shall proceed to trial.

2.   Defendants' motion for summary judgment, Filing No. 65, is granted in all respects, except as to the excessive force claim by Hajek against Officers Stewart and Wilmer.  This excessive force claim shall proceed to trial.

DATED this 28th day of January, 2009.

BY THE COURT:

s/ Joseph F. Bataillon_____
Chief District Judge